## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

| | |
|---|---|
| RHONDA L. HUTTON, O.D. and TAWNY P. KAEOCHINDA, O.D., on behalf of themselves and all others similarly situated, | CASE NO. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** JURY TRIAL DEMANDED |
| v. | |
| NATIONAL BOARD OF EXAMINERS IN OPTOMETRY, INC.,<br>    351 West Camden Street<br>    Baltimore, Maryland 21201<br>    Baltimore County | |
| Defendant. | |

Plaintiffs Rhonda L. Hutton, O.D. and Tawny P. Kaeochinda, O.D., individually and on behalf of the classes of similarly situated persons defined below, allege the following against the National Board of Examiners in Optometry ("NBEO" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE ACTION

1.     The NBEO is the testing organization in the field of optometry in the United States of America (including Puerto Rico). The organization creates and administers various exams in the optometry profession. As part of its exam administration process, the NBEO collects the personal identifying and financial information of exam-takers, including but not limited to names, birth dates, Social Security numbers, addresses, and credit card information (the "Personal Information"). The NBEO recently suffered a data breach involving the Personal Information of exam-takers, the full extent of which is still unknown.

2.     On or around July 23, 2016, optometrists from around the country began to notice that fraudulent Chase accounts were being opened in their names. They started discussing it on various Facebook groups and soon realized they were all victims of the same type of fraud. In particular, many optometrists learned that a Chase Amazon Visa credit card had been applied for in their name, or some other line of credit, and all within a few days of one another. The optometrists soon realized that the only common source amongst them and to which they had all given their Personal Information that included

1

Social Security numbers and dates of birth (information necessary to apply for new lines of credit, among other things), was the NBEO, where every graduating optometry student has to submit their Personal Information to sit for board-certifying exams. This also affected optometrists who served as examiners or committee members for NBEO and optometrists who later sat for additional NBEO competency exams well after graduating from optometry school. Individuals that submitted their Personal Information to NBEO even more than fifteen years ago have been affected, and the fraud has expanded from only Chase accounts to other means.

3.     The NBEO denied its responsibility for the fraud for several days, but on August 4, 2016, it issued a statement on its website stating that it had "decided further to investigate whether personal data was stolen from [its] information systems to support the perpetrators' fraud on individuals and Chase."[1]

4.     Plaintiffs are individuals that submitted their Personal Information to the NBEO as part of the exam-administration process and who's Personal Information has been compromised as a result of the NBEO's failure to maintain reasonable and adequate security measures to safeguard their Personal Information. Plaintiffs are seeking damages, restitution, and injunctive relief requiring the NBEO to implement and maintain reasonable and effective security practices.

## **PARTIES**

5.     Plaintiff Rhonda L. Hutton, O.D., is a resident of Lawrence, Kansas. She submitted Personal Information as part of an exam taken through the NBEO in 1998.

---

[1] http://www.optometry.org/

Plaintiff Hutton's Personal Information was compromised during the NBEO data breach. In particular, on August 5, 2016, Plaintiff Hutton received a Chase Amazon Visa credit card that she did not apply for. The credit card was opened in her maiden name, the name the NBEO maintained in its database for Plaintiff Hutton. Plaintiff Hutton was harmed by having her Personal Information compromised and faces the imminent and certainly impending threat of future additional harm from the increased threat of identity theft and fraud due to her Personal Information being sold on the Internet black market and/or misused by criminals. Plaintiff Hutton also has spent time and money putting credit freezes in place with the credit reporting agencies Experian, TransUnion, and Equifax.

6.      Plaintiff Tawny P. Kaeochinda, O.D., is a resident of Cerritos, California. She submitted Personal Information as part of exams taken through the NBEO in 2006-2008. Plaintiff Kaeochinda's Personal Information was compromised during the NBEO data breach. In particular, on August 1, 2016, she learned that someone had applied for a Chase Amazon Visa credit card using, among other things, her former married name, which was the name she provided to NBEO as part of the examination process. Plaintiff Kaeochinda was harmed by having her Personal Information compromised and faces the imminent and certainly impending threat of future additional harm from the increased threat of identity theft and fraud due to her Personal Information being sold on the Internet black market and/or misused by criminals. Plaintiff Kaeochinda has also spent time and money putting credit freezes in place with the credit reporting agencies Experian, TransUnion, and Equifax, and filing reports with the FTC, FBI, IRS and her local police department.

CLASS ACTION COMPLAINT

7.     Defendant the National Board of Examiners in Optometry, Inc. is a privately-held not-for-profit corporation. The NBEO is incorporated in Maryland with its principal office located at 351 West Camden Street, Baltimore, Maryland 21201, and maintains its principal place of business in North Carolina at 200 S. College Street, Suite 2010, Charlotte, North Carolina 28202.

### JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. At least one Plaintiff and Defendant are citizens of different states. There are more than 100 putative class members.

9.     This Court has jurisdiction over the NBEO because it is incorporated in Maryland.

10.     Venue is proper in this District under 28 U.S.C. § 1391 because the NBEO is a resident of this District.

### FACTUAL ALLEGATIONS

**The NBEO Collects Significant Amounts of Exam-Taker Information**

11.     Established in 1951, the NBEO is the testing organization in the field of optometry in the United States of America (including Puerto Rico). The organization creates and administers various credentialing exams in the optometry profession, and passing its exams is necessary for an optometrist to be licensed to practice. NBEO states that its "mission is to protect the public by accurately assessing the competence of

4

practicing optometrists."[2]

12.    In a notice available on its website, the NBEO states that it gathers, uses and shares the personal information of exam-takers.[3] The notice provides that the NBEO "gather[s] your personal information from our Web site Application and use[s] this information to respond and fulfill your requests with the NBEO."[4]  The NBEO "may share segments of your personal information with our affiliated organizations to complete a transaction you specifically request. The information we share are name, address, last 4-digits of social security number, oe tracker number, birth year, scores, and graduation year."[5]

13.    The NBEO acknowledged that exam-takers' Personal Information is highly sensitive and that it has a duty to safeguard and secure such information. The NBEO states on its website:

**How your Personal Information is Protected**

NBEO has implemented a variety of encryption and security technologies and procedures to protect information stored in our computer systems from unauthorized access. We reveal only the last 4 digits of your credit card number when confirming orders as well as maintaining procedural safeguards that restrict your personal information to employees (or individuals working on our behalf and under confidentiality agreements) who need to know your personal information in order to provide products and/or services that you request.

We use 128-bit encryption technology and Secure Socket Layers ("SSL") in all areas where your personal and account information is required. Our Web site is certified by VeriSign, which verifies that our Web site is

---

[2] http://www.optometry.org/president.cfm.
[3] https://www.optometry.org/privacy.cfm (last visited August 26, 2016).
[4] *Id.*
[5] *Id.*

CLASS ACTION COMPLAINT

authentic and that we use SSL security.[6]

14.    In addition to its substantial current exam-taker database, the NBEO also stores and maintains the Personal Information of previous exam-takers–even years after their relationship with the NBEO has ended.

### The NBEO Data Breach

15.    On July 23, 2016, optometrists from around the country began noticing fraudulent Chase accounts were being opened in their names. The fraudsters appeared to be "testing" the information through Chase to determine whether new cards could be issued using victims' names and information.

16.    The optometrists started discussing the problem on various Facebook groups and everyone soon figured out that NBEO was the common link amongst them. In particular, each optometrist who had learned of a fraudulent credit application in their name had submitted their Personal Information, including Social Security numbers, to NBEO. The other potential common links, the American Optometric Association (AOA), the American Academy of Optometry (AAO), and the Association of Schools and Colleges of Optometry (ASCO), neither gather nor store Social Security numbers or have investigated and confirmed that their databases have not been breached.

17.    When alerted to the issue by the affected optometrists, the NBEO denied its responsibility for the fraud for several days, but on August 4, 2016, the NBEO issued a statement on its website stating that it had "decided further to investigate whether personal data was stolen from [its] information systems to support the perpetrators' fraud

---

[6] http://www.optometry.org/privacy.cfm

CLASS ACTION COMPLAINT

on individuals and Chase." On August 25, 2016, NBEO updated its statement with a cryptic message stating its internal review was still ongoing and that it may take a "number of additional weeks to complete," and continuing to advise affected individuals to "remain vigilant" in checking their credit.[7]

18.    Despite being aware of the potential issue, NBEO still has not individually notified all exam-takers of the data breach.

19.    As a result of NBEO's delay in notifying potentially affected individuals, many class members will be unaware that their Personal Information has been compromised and will not timely take the steps necessary to safeguard themselves from the improper use of that information.

### NBEO Failed to Maintain Reasonable and Adequate Security Measures to Safeguard Exam-Takers' Information

20.    NBEO's failure to provide adequate security measures to safeguard exam-takers' information is especially egregious because NBEO operates in the education field which has recently been a frequent target of scammers attempting to fraudulently gain access to students' and employees' confidential personal information.

21.    In fact, NBEO has been put on notice for years that the education system is a prime target for scammers because of the amount of confidential employee and student records maintained. In 2014 and 2015 alone, numerous higher education institutions suffered high-profile data breaches including the University of Maryland, North Dakota University, Butler University, Indiana University, Arkansas State University,

---

[7] http://www.optometry.org/

Pennsylvania State University, Washington State University, Harvard University, Johns Hopkins University, the University of Virginia, and the University of Connecticut, among many others.

22.    According to a Privacy Rights Clearinghouse study entitled "Just in Time Research: Data Breaches in Higher Education," the higher education industry accounted for 17% of all reported data breaches in the last decade, second only to the medical industry with 27%.

23.    From 2005-2014, there were more than 727 publicized breaches involving educational institutions, compromising at least 14 million personal records.

24.    NBEO was aware, or should have been aware, that it was a target for fraudsters yet failed to implement basic cyber-security measures that could have prevented the breach of its data.

**The Effect of the Data Breach on NBEO's Victims**

25.    The ramifications of NBEO's failure to protect the Personal Information of its exam-takers are severe. Identity thieves can use the information taken in the breach to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund. Some of this activity may not come to light for years.

26.    The U.S. Social Security Administration (SSA) warns that "[i]dentity theft

CLASS ACTION COMPLAINT

is one of the fastest growing crimes in America."[8] Indeed, "[i]dentity thieves can use [the victim's] number and your good credit to apply for more credit in [the victim's] name. Then, they use the credit cards and do not pay the bills. [The victim] may not find out that someone is using your number until [the victim is] turned down for credit or [] begin[s] to get calls from unknown creditors demanding payment for items [the victim] never bought."[9]  In short, "[s]omeone illegally using your Social Security number and assuming your identity can cause a lot of problems."[10]

27.     Under SSA policy, individuals cannot obtain a new Social Security number until there is evidence of ongoing problems due to misuse of the Social Security number. Even then, the SSA recognizes that "a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start."[11]

28.     In fact, a new Social Security numbers is substantially less effective where "other personal information, such as [the victim's] name and address, remains the same" and for some victims, "a new number actually creates new problems. If the old credit information is not associated with [the victim's] new number, the absence of any credit

---

[8] *Identity Theft And Your Social Security Number, Social Security Administration* (Dec. 2013), <http://www.ssa.gov/pubs/EN-05-10064.pdf> (last visited August 29, 2016).
[9] *Id.*
[10] *Id.*
[11] *Id.*

CLASS ACTION COMPLAINT

history under your new number may make it more difficult for [the victim] to get credit."[12]

29.    Identity thieves can use the victim's Personal Information to commit any number of frauds, such as obtaining a job, procuring housing, or even giving false information to police during an arrest. In the medical context, Personal Information can be used to submit false insurance claims, obtain prescription drugs or medical devices for black-market resale, or get medical treatment in the victim's name. As a result, Plaintiffs and members of the classes now face a real and immediate risk of identity theft and other problems associated with the disclosure of their Social Security number, and will need to monitor their credit and tax filings for an indefinite duration.

30.    The processes of discovering and dealing with the repercussions of identity theft are time consuming and difficult. The Department of Justice's Bureau of Justice statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."[13] Likewise, credit-monitoring services are not preventative, meaning they cannot catch identity theft until after it happens.

31.    Additionally, there is commonly lag time between when harm occurs and when it is discovered, and also between when Personal Information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a

---

[12] *Id.*

[13] Erika Harrell and Lynn Langton, *Victims of Identity Theft, 2012*, (Bureau of Justice Statistics), Dec. 2013, <http://www.bjs.gov/content/pub/pdf/vit12.pdf> (last visited August 29, 2016).

CLASS ACTION COMPLAINT

study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

32.    There is a very strong probability that NBEO victims could be at risk of further fraud and identity theft for extended periods of time.

33.    Many class members report recently receiving an usually large number of emails designed to capture their personal information (known as "phishing"), and calls from unknown numbers where the caller hangs-up as soon as the class member answers the phone.

34.    As a result of NBEO's negligent security practices and delay in notifying affected individuals, Plaintiffs and other NBEO exam-takers now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiffs and members of the classes defined below are subject to an increased and concrete risk of further identity theft as a direct result of NBEO's exposure of their Personal Information.

## CLASS ACTION ALLEGATIONS

35.    Plaintiffs seek relief in their individual capacity and as representatives of all

---

[14] U.S. Government Accountability Office, GAO Report to Congressional Requesters, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, at 29, June 2007, <http://www.gao.gov/new.items/d07737.pdf> (last visited August 29, 2016).

CLASS ACTION COMPLAINT

others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiffs bring this action on behalf of themselves and the classes preliminarily defined as:

> Exam-takers of NBEO-administered exams whose Personal Information was compromised as a result of the data breach discovered in July 2016 (the "Class").

> Exam-takers in California of NBEO-administered exams whose Personal Information was compromised as a result of the data breach discovered in July 2016 (the "California Sublass").

36.     Excluded from the classes are NBEO, including any entity in which NBEO has a controlling interest, is a parent or subsidiary, or which is controlled by NBEO, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of NBEO. Also excluded are the judges and court personnel in this case and any members of their immediate families.

37.     **Numerosity**. Fed. R. Civ. P. 23(a)(1). The members of the classes are so numerous that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiffs at this time, based on information and belief, it is in the thousands.

38.     **Commonality**. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the classes, which predominate over any questions affecting only individual class members. These common questions of law and fact include, without limitation:

> a.  Whether NBEO owed a duty to Plaintiffs and members of the classes to

adequately protect their personal and financial information and to provide timely and accurate notice of the data breach to Plaintiffs and members of the class;

b. Whether NBEO knew or should have known that its computer systems were vulnerable to attack;

c. Whether NBEO's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of tens of thousands of exam-takers' Personal Information;

d. Whether Plaintiffs and members of the classes suffered injury, including ascertainable losses, as a result of NBEO's conduct or failure to act;

e. Whether NBEO's Personal Information storage and protection protocols were reasonable under industry standards;

f. Whether NBEO violated California Civil Code section 1798.81.5 by failing to implement reasonable security procedures and practices;

g. Whether NBEO violated California Civil Code section 1798.81 by failing to take all reasonable steps to dispose, or arrange for the disposal, of exam-takers' records within its custody or control containing Personal Information when the records should no longer have been retained by NBEO;

h. Whether NBEO violated California Civil Code section 1798.82 by failing to promptly notify class members that their Personal Information

had been compromised;

i. Whether class members may obtain injunctive relief against NBEO under Civil Code section 1798.84 or under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.;

j. Whether Plaintiffs and members of the classes are entitled to recover actual damages and/or statutory damages; and

k. Whether Plaintiffs and members of the classes are entitled to equitable relief, including injunctive relief, restitution, disgorgement and/or other equitable relief.

39.    All members of the proposed classes are readily ascertainable by objective criteria. NBEO has access to addresses and other contact information for members of the class, which can be used for providing notice to many class members.

40.    **Typicality**. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other class members because Plaintiffs' Personal Information, like that of other class members, was misused and/or disclosed by NBEO.

41.    **Adequacy of Representation**. Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the members of the classes. Plaintiffs' Counsel is competent and experienced in litigating class actions, including several class actions involving data breaches.

42.    **Superiority of Class Action**. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the classes is impracticable. Furthermore,

CLASS ACTION COMPLAINT

the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

43.    Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, NBEO's violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the classes.

44.    Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because NBEO has acted or has refused to act on grounds generally applicable to the classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the classes as a whole.

## FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiffs and the Class)

45.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

46.    Plaintiffs bring this cause of action on behalf of the Class.

47.    In collecting the Personal Information of exam-takers, NBEO owed Plaintiffs and members of the class a duty to exercise reasonable care in safeguarding and protecting that information. This duty included, among other things, maintaining and testing NBEO's security systems and taking other reasonable security measures to protect and adequately secure the personal data of Plaintiffs and the class from unauthorized access and use. NBEO's security system and procedures for handling the Personal

CLASS ACTION COMPLAINT

Information of exam-takers were intended to affect Plaintiffs and the class. NBEO was aware that by taking such sensitive information of exam-takers, it had a responsibility to take reasonable security measures to protect the data from being stolen.

48.    Additionally, NBEO had a duty to timely disclose to Plaintiffs and members of the class that their Personal Information had been or was reasonably believed to have been compromised. Timely disclosure is appropriate so that Plaintiffs and members of the class could, among other things, report the theft of their Social Security numbers to the Internal Revenue Service, monitor their credit reports for identity fraud, undertake appropriate measures to avoid unauthorized charges on their debit card or credit card accounts, and change or cancel their debit or credit card PINs (personal identification numbers) to prevent or mitigate the risk of fraudulent cash withdrawals or unauthorized transactions.

49.    Additionally, NBEO had a duty to destroy exam-takers' Personal Information from its databases within a reasonable amount of time after it was no longer necessary for NBEO to retain it to mitigate the risk of loss of prior exam-takers' Personal Information in the event of a data breach.

50.    There is a causal connection between NBEO's failure to take reasonable security standards to protect exam-takers' data and the injury to Plaintiffs and the class. When individuals have their Personal Information stolen and used to open fraudulent accounts, they are at risk for additional identity theft, and need to buy credit monitoring services and purchase credit reports to determine whether identify theft has occurred.

51.    NBEO is morally to blame for not protecting the data of exam-takers by

CLASS ACTION COMPLAINT

failing to take reasonable security measures. If NBEO had taken reasonable security measures, data thieves would not have been able to take the Personal Information of thousands of current and prior exam-takers.

52.     The policy of preventing future harm weighs in favor of finding a special relationship between NBEO and the class. NBEO's exam-takers rely on NBEO to keep their data safe and in fact are required to share sensitive personal data with NBEO as a condition of taking the optometry board exams necessary to practice optometry in the United States and Canada. If companies are not held accountable for failing to take reasonable security measures to protect their clients' personal information, then they will not take the steps that are necessary to protect against future cyber-attacks and data breaches.

53.     It was foreseeable that if NBEO did not take reasonable security measures, the Personal Information of Plaintiffs and members of the class would be stolen. Organization like the NBEO face a high threat of security breaches due in part to the large amounts and type of data they possess and the value of such information on the black market. NBEO should have known to take precautions to secure exam-takers' data, especially in light of recent data breaches and publicity regarding cyberattacks.

54.     NBEO breached its duty to exercise reasonable care in protecting the Personal Information of Plaintiffs and the class by failing to implement and maintain adequate security measures to safeguard exam-takers Personal Information, failing to monitor its systems to identify suspicious activity, allowing unauthorized access to the Personal Information of Plaintiffs and the class, and failing to encrypt or otherwise

prevent unauthorized reading of such Personal Information.

55.    NBEO further breached its duty to timely notify Plaintiffs and the class about the data breach. NBEO has failed to issue adequate notice to current and prior exam-takers affected by the breach. Additionally, NBEO was, or should have been, aware of breaches in its network security at least as early as August 1, 2016.

56.    But for NBEO's failure to implement and maintain adequate security measures to protect its exam-takers' Personal Information and failure to monitor its systems to identify suspicious activity, the Personal Information of Plaintiffs and members of the class would not have been stolen and used to open fraudulent lines of credit, and they would not be at a heightened risk of identity theft in the future.

57.    NBEO's negligence was a substantial factor in causing harm to Plaintiffs and members of the class.

58.    As a direct and proximate result of NBEO's failure to exercise reasonable care and use commercially reasonable security measures, the Personal Information of NBEO exam-takers was accessed by unauthorized individuals who could and have used the information to commit identity fraud or debit and credit card fraud. Plaintiffs and the class face a heightened risk of identity theft.

59.    Plaintiffs and members of the class have also suffered economic damages, including the purchase of credit monitoring services they would not have otherwise purchased, and time spent notifying the IRS and credit reporting agencies.

60.    Neither Plaintiffs nor other members of the class contributed to the security breach, nor did they contribute to NBEO's employment of insufficient security measures

CLASS ACTION COMPLAINT

to safeguard exam-takers' Personal Information.

61.     Plaintiffs and the class seek compensatory damages and punitive damages with interest, the costs of suit and attorneys' fees, and other and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### Breach of Contract
### (On Behalf of Plaintiffs and the Class)

62.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

63.     Plaintiffs bring this cause of action on behalf of the Class.

64.     NBEO's Privacy Statement promises that the company "has implemented a variety of encryption and security technologies and procedures to protect information stored in our computer systems from unauthorized access. We reveal only the last 4 digits of your credit card number when confirming orders as well as maintaining procedural safeguards that restrict your personal information to employees (or individuals working on our behalf and under confidentiality agreements) who need to know your personal information in order to provide products and/or services that you request." NBEO also purports to "use 128-bit encryption technology and Secure Socket Layers ('SSL') in all areas where your personal and account information is required. Our Web site is certified by VeriSign, which verifies that our Web site is authentic and that we use SSL security."[15]

65.     NBEO's privacy policies constitute an agreement between (1) NBEO and

---

[15] http://www.optometry.org/privacy.cfm

CLASS ACTION COMPLAINT

(2) its exam-takers.

66.     NBEO has breached its agreement with class members to protect their Personal Information by (1) failing to implement security measures designed to prevent this attack, (2) failing to employ security protocols to detect the unauthorized network activity, and (3) failing to maintain basic security measures such as complex data encryption so that if data were accessed or stolen it would be unreadable.

67.     Plaintiffs and class members have been damaged by NBEO's breach of its obligations because their Personal Information has been compromised and they are at an increased risk for future identity theft and fraudulent activity on their financial accounts. Plaintiffs and class members have been deprived of the value of their Personal Information and have lost money and property as a result of NBEO's unlawful and unfair conduct.

68.     Plaintiffs, individually and on behalf of the members of the Class, seek (a) damages suffered by members of the class, (b) equitable relief, and (c) injunctive relief requiring NBEO to implement safeguards consistent with its contractual promises.

<u>**THIRD CAUSE OF ACTION**</u>
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Class)**

69.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

70.     Plaintiffs bring this cause of action on behalf of the Class.

71.     When exam-takers provided their Personal Information to NBEO for purposes of its exam-administration, they assumed that its data security practices and

CLASS ACTION COMPLAINT

policies were state-of-the-art and that it would use part of the cost for the exam that exam-takers pay for such state-of-the-art practices. Exam-takers thus enter into an implied contract with NBEO that NBEO will adequately secure and protect their Personal Information, and will use part of the price of its services to pay for adequate data security measures. In fact, rather than use those moneys to implement adequate data security policies and procedures, NBEO failed to provide reasonable security measures, thereby breaching its implied contract with Plaintiffs and class members.

72.    NBEO solicited and invited exam-takers to hand-over their Personal Information as part of its exam-administration process. Exam-takers accepted NBEO's offers and provided their Personal Information.

73.    When exam-takers provided their Personal Information to NBEO to administer its exams, they entered into implied contracts with NBEO pursuant to which NBEO agreed to safeguard and protect such information and to timely and accurately notify them if their data had been breached and compromised.

74.    Each time an exam-taker provided their Personal Information to NBEO the exchange was made pursuant to the mutually agreed-upon implied contract with NBEO under which NBEO agreed to safeguard and protect exam-takers' Personal Information and to timely and accurately notify them if such information was compromised or stolen.

75.    Plaintiffs and class members would not have provided and entrusted their Personal Information to NBEO as part of its exam-administration process in the absence of the implied contract between them and NBEO to keep the information secure.

76.    Plaintiffs and class members fully performed their obligations under the

21

implied contracts with NBEO.

77.    NBEO breached the implied contracts it made with Plaintiffs and class members by failing to safeguard and protect the Personal Information of Plaintiffs and class members and by failing to provide timely and accurate notice to them that their Personal Information was compromised as a result of the data breach.

78.    As a direct and proximate result of NBEO's breaches of the implied contracts between NBEO and Plaintiffs and class members, Plaintiffs and class members sustained actual losses and damages as described in detail in this Complaint.

**FOURTH CAUSE OF ACTION**
**Violation of the California Customer Records Act,**
**California Civil Code Section 1798.80, *et seq.***
**(On Behalf of Plaintiffs and the California Subclass)**

79.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

80.    Plaintiffs bring this cause of action on behalf of the California Subclass.

81.    "[T]o ensure that personal information about California residents is protected," the California Legislature enacted Civil Code section 1798.81.5, which requires that any business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

82.    NBEO is a "business" within the meaning of Civil Code section 1798.80(a).

22

83.     Plaintiffs and members of the class are "individual[s]" within the meaning of the Civil Code section 1798.80(d). Pursuant to Civil Code sections 1798.80(e) and 1798.81.5(d)(1)(C), "personal information" includes an individual's name, Social Security number, driver's license or state identification card number, debit card and credit card information, medical information, or health insurance information. "Personal information" under Civil Code section 1798.80(e) also includes address, telephone number, passport number, education, employment, employment history, or health insurance information.

84.     The breach of the data of the Personal Information of the tens of thousands of NBEO exam-takers constituted a "breach of the security system" of NBEO pursuant to Civil Code section 1798.82(g).

85.     By failing to implement reasonable measures to protect the Personal Information of its exam-takers, NBEO violated Civil Code section 1798.81.5.

86.     In addition, by failing to take all reasonable steps to dispose, or arrange for the disposal, of exam-takers' records within its custody or control containing Personal Information when the records should no longer have been retained by NBEO, NBEO violated Civil Code section 1798.81.

87.     In addition, by failing to promptly notify all affected NBEO exam-takers that their Personal Information had been acquired (or was reasonably believed to have been acquired) by unauthorized persons in the data breach, NBEO violated Civil Code section 1798.82 of the same title. NBEO's failure to timely notify employees of the breach has caused damage to class members who have had to buy identity protection

services or take other measures to remediate the breach caused by NBEO's negligence.

88.    By violating Civil Code sections 1798.81.5, 1789.81 and 1798.82, NBEO "may be enjoined" under Civil Code section 1798.84(e).

89.    Accordingly, Plaintiffs request that the Court enter an injunction requiring NBEO to implement and maintain reasonable security procedures to protect exam-takers' Personal Information in compliance with the California Customer Records Act, including, but not limited to: (1) ordering that NBEO, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on NBEO's systems on a periodic basis; (2) ordering that NBEO engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (3) ordering that NBEO audit, test, and train its security personnel regarding any new or modified procedures; (4) ordering that NBEO, consistent with industry standard practices, conduct regular database scanning and security checks; (5) ordering that NBEO, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; (6) ordering NBEO to meaningfully educate its exam-takers about the threats they face as a result of the loss of their Personal Information to third parties, as well as the steps they must take to protect themselves; and (7) ordering NBEO to encrypt sensitive personal information.

90.    Plaintiffs further request that the Court require NBEO to (1) identify and

CLASS ACTION COMPLAINT

notify all members of the California Subclass who have not yet been informed of the data breach; and (2) to notify affected exam-takers of any future data breaches by email within 24 hours of NBEO's discovery of a breach or possible breach and by mail within 72 hours.

91.    As a result of NBEO's violation of Civil Code sections 1798.81.5, 1798.81 and 1798.82, Plaintiffs and members of the California Subclass have and will incur economic damages relating to time and money spent remedying the breach, including but not limited to, expenses for bank fees associated with the breach, any unauthorized charges made on financial accounts, lack of access to funds while banks issue new cards, tax fraud, as well as the costs of credit monitoring and purchasing credit reports.

92.    Plaintiffs, individually and on behalf of the members of the California Subclass, seek all remedies available under Civil Code section 1798.84, including, but not limited to: (a) damages suffered by members of the class; and (b) equitable relief.

93.    Plaintiffs, individually and on behalf of the members of the California Subclass, seek reasonable attorneys' fees and costs under applicable law.

### FIFTH CAUSE OF ACTION
**Unlawful and Unfair Business Practices Under California Business and Professions Code § 17200, *et seq.*
(On Behalf of Plaintiffs and the California Subclass)**

94.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

95.    Plaintiffs bring this cause of action on behalf of the California Subclass.

96.    NBEO's acts and practices, as alleged in this Complaint, constitute

CLASS ACTION COMPLAINT

unlawful and unfair business practices, in violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., and because NBEO's conduct was negligent:

    a.   NBEO's practices were unlawful and in violation of California Civil Code section 1798.81.5(b) because NBEO failed to take reasonable security measures in protecting its former and current employees' personal data;

    b.   NBEO's practices were unlawful and in violation of California Civil Code section 1798.81 because NBEO failed to take all reasonable steps to dispose, or arrange for the disposal, of exam-takers' records within its custody or control containing Personal Information when the records should no longer have been retained by NBEO; and

    c.   NBEO's practices were unlawful and in violation of California Civil Code section 1798.82 because NBEO has unreasonably delayed informing Plaintiffs and members of the class about the breach of security after NBEO knew the data breach occurred.

97.    The acts, omissions, and conduct of NBEO constitute a violation of the unlawful prong of the UCL because they failed to comport with a reasonable standard of care and California public policy as reflected in statutes such as the Information Practices Act of 1977, Cal. Civ. Code § 1798, *et seq*., and California Customer Records Act, which seek to protect individuals' data and ensure that entities who solicit or are entrusted with personal data utilize reasonable security measures.

98.    In failing to protect exam takers' Personal Information and unduly delaying

CLASS ACTION COMPLAINT

informing them of the data breach, NBEO has engaged in unfair business practices by engaging in conduct that undermines or violates the stated policies underlying the California Customer Records Act and the Information Practices Act of 1977. In enacting the California Customer Records Act, the Legislature stated that: "[i]dentity theft is costly to the marketplace and to consumers" and that "victims of identity theft must act quickly to minimize the damage; therefore expeditious notification of possible misuse of a person's personal information is imperative." 2002 Cal. Legis. Serv. Ch. 1054 (A.B. 700). NBEO's conduct also undermines California public policy as reflected in other statutes such as the Information Practices Act of 1977, Cal. Civ. Code § 1798, *et seq*., which seeks to protect individuals' data and ensure that entities who solicit or are entrusted with personal data utilize reasonable security measures.

99.    As a direct and proximate result of NBEO's unlawful and unfair business practices as alleged herein, Plaintiffs and members of the California Subclass have suffered injury in fact. Plaintiffs and the California Subclass have been injured in that their Personal Information has been compromised and used to open fraudulent credit account, and they are at an increased risk for additional future identity theft and fraudulent activity on their financial accounts. Class members have also lost money and property by purchasing credit-monitoring services they would not otherwise had to but for NBEO's unlawful and unfair conduct.

100.    As a direct and proximate result of NBEO's unlawful and unfair business practices as alleged herein, Plaintiffs and members of the California Subclass face an increased risk of identity theft based on the theft and disclosure of their Personal

Information.

101.    Because of NBEO's unfair and unlawful business practices, Plaintiffs and members of the California Subclass are entitled to relief, including restitution for costs incurred associated with the data breach and disgorgement of all profits accruing to NBEO because of its unlawful and unfair business practices, declaratory relief, and a permanent injunction enjoining NBEO from its unlawful and unfair practices.

102.    The injunctive relief that Plaintiffs and members of the California Subclass are entitled to includes, but is not limited to: (1) ordering that NBEO, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on NBEO's systems on a periodic basis; (2) ordering that NBEO engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (3) ordering that NBEO audit, test, and train its security personnel regarding any new or modified procedures; (4) ordering that NBEO, consistent with industry standard practices, conduct regular database scanning and security checks; (5) ordering that NBEO, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; (6) ordering NBEO to meaningfully educate its exam-takers about the threats they face as a result of the loss of their personal information to third parties, as well as the steps they must take to protect themselves; and (7) ordering NBEO to encrypt sensitive personal information.

CLASS ACTION COMPLAINT

103.    Plaintiffs, individually and on behalf of the members of the California Subclass, also seeks reasonable attorneys' fees and costs under applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the classes set forth herein, respectfully requests the following relief:

a. That the Court certify this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and, pursuant to Fed. R. Civ. P. 23(g), appoint the named Plaintiffs to be Class representatives and the undersigned counsel to be Class counsel;

b. That the Court award Plaintiffs and the classes appropriate relief, including actual and statutory damages, restitution and disgorgement;

c. That the Court award Plaintiffs and the classes equitable, injunctive and declaratory relief as may be appropriate under applicable state laws;

d. That the Court award Plaintiffs and the classes actual damages, compensatory damages, statutory damages, and statutory penalties, to the full extent permitted by law, in an amount to be determined;

e. That the Court award Plaintiffs and the classes pre-judgment and post-judgment interest;

f. That the Court award Plaintiffs and the classes reasonable attorney fees and costs as allowable by law; and

g. That the Court award Plaintiffs and the classes such other, favorable relief as

CLASS ACTION COMPLAINT

allowable under law or at equity.

## JURY DEMAND

Plaintiffs hereby demand a jury trial in the instant action.


Dated:  August 30, 2016                    Respectfully submitted,

                                  By:    s/ Norman E. Siegel
                                         Norman E. Siegel
                                         Barrett J. Vahle
                                         J. Austin Moore
                                         (*pro hac vice forthcoming*)
                                         STUEVE SIEGEL HANSON LLP
                                         460 Nichols Road, Suite 200
                                         Kansas City MO 64112
                                         siegel@stuevesiegel.com
                                         vahle@stuevesiegel.com
                                         moore@stuevesiegel.com
                                         Tel:    (816) 714-7100
                                         Fax:    (816) 714-7101

                                         Hassan Zavareei    (No. 18489)
                                         TYCKO & ZAVAREEI LLP
                                         1828 L. Street, NW, Suite 1000
                                         Washington, DC 20036
                                         hzavareei@tzlegal.com
                                         Tel:    (202) 973-0910
                                         Fax:    (202) 973-0950


                                         *Counsel for Plaintiffs and the Class*